Filed May 13, 1891.

---

No. 89.

## McCoy v. Oldham.

PLEADING.—*Money Had and Received.*—*Bill of Particulars.*—*Motion to Make More Specific.*—In an action for money had and received by the defendant for the use of the plaintiff, a bill of particulars is not necessary. If any uncertainty exists it can be remedied upon a motion to make the complaint more specific.

SAME—*Bill of Particulars.*—*When not Necessary.*—If the items of an account in respect to amounts, dates and for what accrued are particularized in the body of the complaint, no other bill of particulars need be filed.

TRIAL BY JURY.—*Suit by Assignee of an Account.*—In an action by the assignee of an account, a trial by jury can be demanded.

SAME.—*When Jury can not be Demanded.*—*Test.*—In determining what suits are triable by jury, the court must look to the character of the questions to be decided, and if they are essentially of an equitable nature, or if some essential equitable remedy is invoked, as contradistinguished from legal questions and remedies, the case should be tried by the court, otherwise the parties will be entitled to a jury.

LEASE.—*Judgment for Possession is Evidence of the Execution of the Lease.*—In an action to recover rent due on a lease, the record of a judgment obtained by the lessee against the lessor for possession of the leased premises under the lease, is admissible for the purpose of proving the execution of the lease.

DAMAGES.—*Measure of.—Landlord Failing to Repair.—Set-Off.*—If a landlord fails to repair in accordance with his covenant to do so, the tenant is not bound to make the repairs, but may rely upon the performance of the covenant by his landlord, and his measure of recovery is, ordinarily, the diminution of the rental value, on account of the failure to keep the covenant; but if the tenant see fit to make the repairs, he may do so and recover their cost from the landlord. In an action by the landlord for such rent the court may set off against his claim the decreased rental value of the premises, occasioned by the landlord's failure to repair in accordance with his covenant.

From the Spencer Circuit Court.

*E. M. Swan* and *C. B. Laird,* for appellant.

*S. B. Hatfield* and *J. A. Hemenway,* for appellee.

CRUMPACKER, J.—William Bratcher leased to Christopher C. McCoy a tract of land containing thirty acres, in Spencer county, for the term of three years from the 1st day of January, 1886, at and for a rental of $150 per year. At the time the contract was made about ten acres of the leased premises were covered with logs, brush, and grubs, and was unfit for cultivation, and the lessor agreed, as part of the contract, to grub, clear, and subdue that portion of the land so it would be fit for the plow by the first of March, 1886.

He failed to give possession under the contract, and McCoy sued him therefor, and obtained a judgment for possession, in the Spencer Circuit Court, on the 28th day of April, 1886, and for costs, and within a few days after the judgment was obtained the lessor surrendered the premises to McCoy, who held and occupied them until January 1st, 1889, under the lease. Bratcher failed to grub and clear that portion of the land which was unsubdued and unfit for cultivation, and it remained in that condition until the expiration of the lease. In the judgment for the possession of the premises the finding of the court recites the terms and conditions of the lease, although no special finding was requested.

Bratcher subsequently assigned, in writing, the rent accrued and to accrue under the lease to Oldham, and the as-

signment was endorsed upon the margin of the record of the judgment for possession.

This action was brought by Oldham, as assignee, to recover the rents due under the lease.

The complaint is in four paragraphs. The first is the common count for money had and received by McCoy for the use of Oldham.

The second is for rent due the plaintiff from the defendant, for the use and occupation of the leased premises, particularly describing them, to the amount of $500, which was due and wholly unpaid.

In the third paragraph it is alleged that Bratcher demised a certain described tract of land to the defendant for a term of three years, at a rental of $150 a year, and that he afterwards sold and assigned by a written instrument all of the rent accrued and to accrue to the plaintiff; that the same, amounting to $500, was due and wholly unpaid.

The fourth paragraph recites the contract and subsequent suit and judgment for possession under the lease, and the finding of the terms of the lease in the record, and the assignment of the lease and rents accruing thereunder to the plaintiff upon the judgment-docket, and that the rent for the whole time was due and unpaid.

A separate demurrer was filed to each paragraph of complaint and overruled.

An answer was then filed consisting of four paragraphs. The first was the general denial. The second was a set-off. The third was in the nature of a counter-claim, alleging the covenant upon the part of the lessor to grub and clear the unsubdued portion of the land, his failure so to do, and damages to the amount of several hundred dollars, which was asked to be recouped against the claim for rent. This paragraph further alleges that Bratcher failed to put the defendant in possession of the premises under the lease, but wrongfully withheld the same from him, and he was compelled to bring suit for the recovery thereof, and in so doing

incurred expenses amounting to a large sum, which was also' asked to be recouped from the plaintiff's demand.' The fourth paragraph was a plea of payment.

A reply was filed which put the cause at issue, and when it came on for trial the plaintiff demanded a jury, and the defendant objected on the ground that the cause was one purely of equitable cognizance and was not triable by jury. The objection was overruled and exceptions entered, and the cause was tried by a jury. A verdict was returned in favor of the plaintiff below.

The appellant filed a motion for a new trial, assigning fourteen causes, which was overruled and judgment was rendered upon the verdict.

The alleged errors relied upon for the reversal of the judgment in this court are, in overruling the demurrers to the first and second paragraphs of complaint, and overruling the motion for a new trial.

The only objection pointed out to the first and second paragraphs of complaint is that no bill of particulars of the indebtedness sued upon was filed with either of them. In actions for money had and received by the defendant for the use of the plaintiff the practice does not require a bill of particulars. If any uncertainty exists it can be remedied upon motion for more specific information. *State, ex rel.,* v. *Sims,* 76 Ind. 328.

Thus the objection is disposed of as far as it relates to the first paragraph.

In the second paragraph the amount of the demand is definite, the date upon which it became due is given, and the real estate for the use of which it accrued is particularly described; so but little, if any, additional information would have been furnished by a bill of particulars.

Where the items of any account in respect to amounts, dates and for what accrued are particularized in the body of the complaint, no other bill of particulars need be filed. *Wagoner* v. *Wilson,* 108 Ind. 210.

McCoy *v.* Oldham.

The court did not err in overruling the demurrer.

One of the reasons for a new trial to which our notice is directed was error in allowing the appellee a jury as a matter of right.

It is claimed on behalf of appellant that the suit, being brought by the assignee of an account, was one of exclusive equitable cognizance under the law as it was prior to the 18th of June, 1852, and under the force of section 409 of the code of 1881, was not triable by a jury.

It is true, the common law does not authorize the assignment of choses in action generally, but it recognizes equitable assignments to the extent that the assignee of such a claim may prosecute an action in the name of the assignor to enforce it for his own benefit. In courts of chancery the equitable owner can sue in his own name and enforce collection by making the assignor a party to answer to his interest. There is no statute in this State, expressly authorizing the assignment of accounts, but the rights of the assignee are generally recognized, and section 251 of the code requires all suits to be brought in the name of the real party in interest, whether his title be legal or equitable, so it may be said that the right of the assignee of an account to enforce its collection in a court does not depend upon principles of equity jurisprudence, but upon the express terms of a positive statute, and where this is the case the provisions of section 409, *supra,* do not apply. *Kitts* v. *Willson,* 106 Ind. 147.

The assignor of the account in suit was not made a party to answer to his interest, but no objection seems to have been taken to that. There was no denial of the assignment except the general traverse, and the question of the assignment was not treated as an issuable fact at the trial.

In determining what suits are triable by jury, the court must look to the character of the questions to be decided, and if they are essentially of an equitable nature, or if some essentially equitable remedy is invoked, as contradistinguished

from legal questions and remedies, the case should be tried by the court, otherwise the parties will be entitled to a jury. *Martin* v. *Martin*, 118 Ind. 227.

There was no error in allowing a jury in the case at bar.

The court admitted in evidence, over the objection of the appellant, the record of the judgment in the suit of McCoy *v.* Bratcher for the recovery of the premises under the lease. It is argued that the finding of the court ascertaining the terms of the lease, having been made by the court voluntarily and without the request of either litigant, had no binding force, and should have been excluded on that account. This record was competent to prove the fact of the lease, if not its terms, and was admissible for that purpose, so no error occurred in permitting it to be read.

The appellant offered evidence upon the trial tending to prove the difference between the rental value of the leased premises as they were, and what the rental value would have been if appellee had grubbed and cleared the unimproved portion according to the agreement. This evidence was excluded, upon the theory that the measure of damages resulting from the appellee's failure to reduce the land to a condition of cultivation was the reasonable cost of having that work done, and not the diminution of the rental value resulting from the failure. This ruling of the court is insisted upon as error.

There is some conflict in the adjudications of the courts of last resort upon this question. It is held by some that upon the breach of a covenant upon the part of the landlord to repair leased premises, it is the duty of the tenant to make the repairs, and he can only recover the reasonable cost thereof from the landlord. These cases also hold that if the landlord induces the tenant to believe that he will perform his covenant, and the tenant, relying upon such inducement, fails to repair, he may recover such special damages as may result during the time he was so misled, and while he is engaged in making the repairs. This doctrine is founded upon

the principle that one will not be permitted by his own fault or inattention to unnecessarily suffer damages to his property to be enhanced and then recover them from the original wrong-doer.

Upon the other hand the unquestioned weight of the authorities is, that in such cases the tenant has two remedies, and he may elect which he will pursue. He may repair the premises and recover the cost thereof from the landlord; or he may rely upon the performance of the covenant by the landlord, and in the event of its breach recover all the damages proximately flowing therefrom, regardless of the expense and trouble that would have been required to have made the repairs; and upon the latter theory the measure of recovery would be, ordinarily, the diminution of the rental value, on account of the failure to keep the covenant.

Thus, in *Myers* v. *Burns*, 35 N. Y. 269, the court said: "The defendant had two different remedies, of either of which he could have availed himself, in the event of the plaintiff's failure to repair, after due notice. He could have made the repair himself, and have called upon the plaintiff to refund the expense, as he actually did, in the case of the painting; or he could have called upon the plaintiff to take the ordinary responsibility of a party failing to perform his contract, to wit: to pay the damages caused by such failure, as he did in regard to the item in question. In the first case, the rule confines the damages to the actual expense, if no special damage is shown; but in the other, the cost of the repair is not an element in the case. It is as if there was no such right to repair, on the part of the lessee, but the claim rested solely in damages."

In the case of *Culver* v. *Hill*, 68 Ala. 66, it was held that where the landlord agreed to keep the fences in repair the tenant had the right to rely upon his performance of the agreement and in the event of a failure, could recover damages for the destruction of crops resulting therefrom, although the tenant could at small expense have procured

material and repaired the fence himself, but he was not bound to do this.

The same rule of law is expressly affirmed in the following cases: *Hexter* v. *Knox*, 63 N. Y. 561; *Vandegrift* v. *Abbott*, 75 Ala. 487; *Prescott* v. *Otterstatter*, 79 Pa. St. 462; *Hoy* v. *Gronoble*, 34 Pa. St. 9; *Dempsey* v. *Hertzfield*, 30 Ga. 866; *Hinckley* v. *Beckwith*, 13 Wis. 34; *Rockford, etc., R. R. Co.* v. *Beckemeier*, 72 Ill. 267; *Chicago, etc., R. R. Co.* v. *Ward*, 16 Ill. 522.

And the rule finds strong support in the decisions of the Supreme Court of this State. *Chicago, etc., R. W. Co.* v. *Barnes*, 116 Ind. 126; *Block* v. *Ebner*, 54 Ind. 544; *Buck* v. *Rodgers*, 39 Ind. 222; *Indiana, etc., R. W. Co.* v. *Moore*, 23 Ind. 14; *Williams* v. *Oliphant*, 3 Ind. 271.

The doctrine supported by this array of authorities is the sounder in principle and more in harmony with the general rules of law fixing the liability for the breach of kindred covenants. It is well understood that if one sells property and covenants against encumbrances, and it should be encumbered, the covenantee would have the right, when necessary to protect his title, to discharge the encumbrance and recover the costs thereof from the covenantor, but he is not compelled to do so. He may suffer the property to be sold upon the encumbrance and the title to be divested, and then recover the entire purchase-money, with interest, from the covenantor, without regard to the fact that the encumbrance might be disproportionately small as compared to the value of the property or the purchase-price.

One who, for a sufficient consideration, agrees to perform an act and fails, can not complain if he is required to bear the natural and proximate consequences of his failure.

We need not decide what the rights of the parties would be if the thing to be done should be of a trifling nature as compared to the consequences that might flow from a failure to do it.

In the case before us the landlord agreed to clear and

grub about ten acres of land, and the consequences of a failure would be the loss of the use of that part of the land.

We are of the opinion that the appellant was not required to disarrange his own plans or subject himself to any considerable expense or inconvenience in order to save the appellee from damages resulting from his own breach of duty. It is argued that in the judgment for possession the appellant obtained an unqualified order for possession, and Bratcher had no right thereafter to enter upon the premises to do the clearing. There is no merit in this claim. There is always an implied reservation of the right of entry to repair where the landlord covenants to do so. And, furthermore, Bratcher did not offer to do the work, or tender performance, consequently he is in no attitude to assert that it was the appellant's fault that he did not keep his agreement.

The evidence offered should have been admitted.

We need not decide other questions discussed under the motion for a new trial, as they may not occur upon another trial.

The judgment is reversed, with instructions to the trial court to sustain the motion for a new trial.

REINHARD, J., took no part in the decision of this case.

Filed May 14, 1891.