### RUCKER et al. v. MASON et al.

No. 7429—Opinion Filed Nov. 15, 1916.

(161 Pac. 195.)

1. **Landlord and Tenant—Rents—Abandonment of Premises—Reduction of Damages.**

If a tenant wrongfully abandons leased premises before the expiration of the term, the landlord may give notice to the tenant of his refusal to accept the surrender or abandonment thereof, when such notice can be given, and he may take possession of the premises for the purpose of protecting and preserving them, and he may sublet the same, for the unexpired term of the lease for the benefit of the lessee to reduce his damages.

2. **Landlord and Tenant—Breach of Contract—Damages.**

In an action for the breach of a lease contract, the contract itself must furnish the measure of damages, and the amount recovered cannot, except in cases where recovery may be had for exemplary damages and penal damages, and in sections 2871 and 2878, Rev. Laws 1910, exceed the amount the party could have gained by a full performance of the lease contract on both sides.

(Syllabus by Brunson, C.)

Error from District Court, Tulsa County; H. B. Schaeffer, Judge Pro Tem.

Action by F. M. Rucker and another, copartners under the firm name and style of Rucker Bros., against J. P. Mason and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded for new trial.

Adams & Wills and Randolph, Haver & Shirk, for plaintiffs in error.

Charles B. Rogers and Fred A. Fulghum, for defendant in error E. M. Brown.

Opinion by BRUNSON, C. The parties to this lawsuit stand in the same relative position here as they did in the trial court, and for convenience they will be designated here as they were there.

This action was filed in the district court of Tulsa county on the 20th day of March, 1912, for damages. It appears that the plaintiffs on the 27th day of October, 1909, leased the Hotel Rucker in Claremore, Okla., by a written lease for a term of five years from and after the 1st day of January, 1910, to the defendants J. P. Mason and E. M. Brown at a rental to be paid in advance on the first day of each month as follows: For the first six months $300 per month; for the second six months $325 per month; for the second year $350 per month; for the third year $400 per month; for the fourth year $450 per month; and for the fifth year $475 per month. The defendants in the lease agreed to furnish and equip the hotel throughout at their own expense in a modern and up-to-date manner, and to maintain it in such condition during the life of the lease. And they did so furnish and equip it. They occupied and operated it from the 1st day of January, 1910, up to the 1st day of December, 1911, when they abandoned it, at which time the plaintiffs served a written notice on them, which, by its terms, notified them that the plaintiffs refused to accept possession of the hotel or relieve the defendants from any rights, liabilities, or responsibilities as set out and specified by the terms of the lease contract, and that the plaintiffs would continue to look to and hold them for the payment of the rents and the faithful performance of all the terms and conditions of the lease, and that they would be asked to respond to them in damages for any and all loss which they might suffer by reason of their failure to comply with the terms and conditions set out in said lease; that the hotel and premises were at their disposal under the terms of the lease, and that the plaintiffs were willing and ready to perform all the covenants, agreements, and stipulations contained in the lease; that the plaintiffs would make such use of the hotel as they were able; and that they would lease the same for the balance of the term covered by the lease contract for the benefit of the defendants and for the purpose of reducing their damages.

It is alleged that while the lease contract was signed only by the plaintiffs and the de-

fendants J. P. Mason and E. M. Brown, the defendant B. C. Beane was at the time of the execution of said lease or later became a party thereto, and a state of facts is pleaded which it is contended is sufficient to establish the same liability against him as against the other defendants.

The defendants E. M. Brown and B. C. Beane filed separate motions to make the original petition more definite and certain, and also filed separate demurrers, which motions and demurrers were sustained in part and overruled in part, and exceptions were duly saved, whereupon an amended petition was filed, and other demurrers filed by said defendants, which were overruled in part and sustained in part, and exceptions saved, whereupon a second amended petition was filed. There was also filed a first and a second supplemental petition.

In the first cause of action in the second amended petition it is alleged that at the time of the abandonment of the leased premises on the 1st day of December, 1911, there was due and owing as rents, under the terms of the lease, the sum of $2,027.84, and interest thereon, and judgment is asked for that amount.

In the second cause of action in said petition it is alleged that after the abandonment of the hotel and the serving of said notice on the defendants, the plaintiffs took possession of the same and continued in charge thereof from the 1st day of December, 1911, until the 2d day of January, 1912, during all of which time they were endeavoring to lease the same to other parties for the remander of the term covered by said lease, and that on the 2d day of January, 1912, they succeeded in leasing the same to W. H. Evarts and John S. Watson for and on behalf of the defendants for the remainder of the time covered by the lease; that they went into the possession of the same and operated it until about the 1st day of March, 1912, when they abandoned it; and that after giving defendants credit for all rents received by the plaintiffs from the hotel, up to the 1st day of March, 1912, the defendants were liable to the plaintiffs for rents under the terms of the lease contract in the sum of $1,500, and interest thereon, and judgment is asked for that amount and interest.

In the third cause of action in said petition it is alleged that the plaintiffs during the time they were in possession of the leased premises from the 1st day of December, 1911, to the 1st day of March, 1912, for the purpose of diminishing the liability of the defendants to the plaintiffs and for the pur-

pose of continuing, maintaining, and protecting the business established therein, the cost and expenses to which they were put exceeded all income and revenues derived therefrom in the sum of $417.75, and judgment is asked for that amount.

In the fourth cause of action of said petition it is alleged that the plaintiffs during the time they were in possession of the leased premises from the 1st day of December, 1911, to the 1st day of March, 1912, for and on behalf of said defendants, paid the sum of $111.56 taxes levied against the hotel furniture and equipment belonging to the defendants located on said premises, and that in order to prevent a sale and removal of the same therefrom they were forced to pay the same, and judgment is asked for that amount and interest.

A demurrer was sustained to the third and fourth causes of action, and exceptions duly saved.

On the 21st day of April, 1913, the plaintiffs filed their first supplemental petition, and in the first cause of action therein it is alleged that the rents which had accrued under the terms of said lease from the 1st day of April, 1912, to the 1st day of April, 1913, amounted to the sum of $5,134.70, and that the defendants are indebted to the plaintiffs for said amount as rents under the terms of said lease, but that they have wholly neglected and failed to pay the same, and judgment is asked for that amount, with interest thereon.

In the second cause of action in said supplemental petition it is alleged that while in possession of said leased premises from the 1st day of April, 1912, to the 1st day of April, 1913, and for the purpose of diminishing the liability of the defendants, the cost and expenses to which they were put exceeded the income therefrom in the sum of $1,844.90, and judgment is asked for that amount, with interest thereon. The defendant B. C. Beane interposed a demurrer to said supplemental petition, and the court overruled the demurrer to the first cause of action, but sustained it as to the second cause of action, and exceptions were duly saved.

On the 13th day of April, 1914, the plaintiffs filed their second supplemental petition, and the allegations in the first cause of action of the same are practically the same as the allegations in the first cause of action in the first supplemental petition, except that they ask for judgment for the rents accruing under the lease contract from the 1st day of May, 1913, to the 1st day of April, 1914, which it is alleged amounts to $5,676.10, and

they ask judgment for that amount, with interest thereon. An the allegations in the second cause of action therein are practically the same as the allegations in the second cause of action in the first supplemental petition, with the exceptions that they ask for $1,844.90 damages, with interest thereon. A demurrer was filed to the second supplemental petition. The court overruled it as to the first cause of action, but sustained it as to the second cause of action, and exceptions were duly saved.

The separate answer of B. C. Beane is: (1) A general denial; and (2) it is affirmatively alleged that the defendants were evicted by the plaintiffs from the leased premises on or about the 1st day of December, 1911, and that since said date the plaintiffs have been wrongfully in possession of the same without the consent or acquiescence of the defendants.

The separate answer of E. M. Brown is: (1) A general denial; and (2) it is admitted that the defendants abandoned the leased premises on or about the 1st day of December, 1911, and that the plaintiffs took possession of the same; and (3) it is alleged that the plaintiffs operated and conducted the hotel, and that the earnings therefrom over and above the expenses of operating it exceeded the amount of the rents as provided for under the terms of the lease.

The Hon. L. M. Poe, district judge, being disqualified, the Hon. H. B. Schaeffer, a member of the bar, in good standing, of Tulsa county, was agreed upon as judge pro tempore to try the case.

The trial of the cause resulted in a verdict and judgment for the plaintiffs, and against the defendants J. P. Mason and E. M. Brown in the sum of $3,584.28, and also a verdict and judgment against the plaintiffs and for the defendant B. C. Beane. In due time a motion for a new trial was filed by the plaintiffs, overruled and exceptions saved, and the case is now before us on appeal. Upon the conclusion of the evidence, the defendants filed a demurrer thereto, and the court instructed the jury as follows: .

"You are instructed that plaintiffs cannot recover in this case against the defendants for any rents accruing after the abandonment of Evarts and Watson as alleged in the second count of plaintiffs' second amended petition herein."

And this action of the court is assigned as error. The error complained of in the case arises out of the holding of the trial court that the acts and conduct of the plaintiffs subsequent to the abandonment of the leased premises by Evarts and Watson amounted to an acceptance of the abandonment of said hotel by the defendants; that these acts and conduct in law amounted to an acceptance of such abandonment, and the plaintiffs were therefore precluded from recovering the rentals stipulated and provided for in the lease contract, from and after the 1st day of March, 1912. And it is earnestly insisted that in this the court committed prejudicial error.

The evidence discloses that the plaintiffs not only served the notice on the defendants upon their abandonment of the leased premises, but in keeping with the terms of said notice, leased said hotel to Evarts and Watson for the rest of the time covered by said lease contract, and that after they abandoned it and on or about the 26th day of October, 1912, they entered into another lease contract with Snell and Remler, and that soon thereafter they too abandoned said hotel. There is a stipulation in the lease contract with Evarts and Watson, and also the lease contract with Snell and Remler to the effect that the lease was entered into for one purpose and only one purpose, namely, to mitigate the damages to which the defendants were liable to the plaintiffs under the terms of said lease contract.

The testimony also discloses that the plaintiffs wrote many letters endeavoring to release the premises; that they also advertised extensively for a tenant; and that all of the plaintiffs' acts, according to the testimony, show that they were studiously trying to avoid releasing the defendants from the stipulation set forth in said lease contract.

In the case of Higgins v. Street. 19 Okla. 45, 92 Pac. 154, in the body of the opinion it is said:

"A lease in writing constitutes a written contract, and the lessee cannot surrender it or be released from its terms without the consent of the lessor, and it is absolutely essential to the termination of the term that both the lessor and the lessee agreed to the surrender. * * * Stewart v. Sprague. [71 Mich. 50]. 38 N. W. 673: Bourdereaux v. Walker, 78 Ill. App. 63; Milling v. Becker. 96 Pa. 182; Lane v. Nelson, 167 Pa. 602. 31 Atl. 864: Scheelky v. Koch. 119 N. C. 80. 25 S. E. 713; Livermore v. Eddy. 33 Mo. 547: Detroit Pharmacal Co. v. Burt. 124 Mich. 220, 82 N. W. 893; Jones on Landlord and Tenant. sec. 539."

It seems to be a general rule of law laid down in this jurisdiction that when the tenant abandons the premises the landlord, at his election, has three remedies: (a) The landlord may enter the premises at once, terminate the lease contract. and recover the rents

due up to the time of the abandonment; or (b) he may suffer the premises to remain vacant and sue on the contract for the entire rents; or (c) he may give notice to the defendant of his refusal to accept a surrender and sublet the premises for the unexpired term of the lease contract for the benefit of the defendant to reduce his damages. The plaintiffs in the instant case adopted the last remedy and gave notice to the defendants in writing that they refused to accept a surrender of the premises, but that they would take possession of the premises and sublet the hotel for the unexpired term of the lease for the benefit of the defendants to reduce their damages.

The defendants J. P. Mason and B. C. Beane have not filed briefs in this case, and have not otherwise appeared in this court, but the defendant E. M. Brown has filed a brief in which he contends that his position as to the abandonment of the premises is sustained by the decision of this court in the case of Hargrove et al. v. Bourne, 47 Okla. 484, 150 Pac. 121. In that opinion Mr. Justice Hardy used the following language:

"It is true that after premises are wrongfully abandoned by the tenant the landlord may take possession of the premises for the protection and preservation thereof, in which case his measure of damages would be the agreed rental as fixed by the terms of the contract; or he may let the premises stand vacant, and in that event would be entitled to collect the rent according to the terms of the lease; or he may give notice to the tenant of his refusal to accept a surrender, when such notice can be given, and sublet the premises for the unexpired term for the benefit of the tenant to reduce the damages."

It is true that this court held in that case that the plaintiff was not entitled to recover, but the facts in this case are quite different from the facts in the case at bar. No notice was served on the lessee as in this case; the premises were not sublet as here, and no attempt was made so to do.

The rule of law applicable to this case is well stated in 24 Cyc. 1373, which reads as follows:

"An express agreement to accept the premises need not be shown, but the landlord's consent may be implied from circumstances and from the acts of the parties. There must, however, be some unequivocal act on the part of the landlord which unmistakably evinces an intention on his part to terminate the lease and the relationship of landlord and tenant."

In Underhill on Landlord and Tenant, vol. 2, sec. 728, a discussion of the resumption of possession by landlord as an acceptance of surrender, we find this language:

"The mere going into possession of the premises by the landlord after the tenant has moved out, before the expiration of the term, is usually not an acceptance of the surrender. The intention of the landlord in re-entering and the motives with which this act was accompanied are very material. * * * Of course, if a landlord, within a short time after the tenant has gone out, shall take possession of them without anything being brought home to the tenant to show that the intent of the landlord is to hold him for the rent, a slight presumption of an intention on the part of the landlord to accept the surrender may arise which is for the landlord to rebut by proof of facts and circumstances which will show a contrary intention. * * * If the landlord takes possession and charge of the property after the tenant has abandoned it merely to protect it from injury, or, if, knowing that the tenant does not mean to return, he rents it on account of the tenant, these acts may not show an acceptance of the surrender on his part, but if, after an abandonment, he takes possession and rents the premises on his own account, this is conclusive evidence of a surrender" Armour Packing Co. v. Des Moines Pork Co., 116 Iowa, 123, 89 N. W. 196, 93 Am. St. Rep. 270; White v Berry, 24 R. I. 74, 52 Atl. 682; Aberdeen Coal & Mining Co. v. City of Evansville, 14 Ind. App. 621, 43 N. E. 316; Duffy v. Day. 42 Mo. App. 638; Williamson v. Crossett. 62 Ark. 393, 36 S. W. 27; Terstegge v. First German Mutual Benev. Soc., 92 Ind. 82, 87, 47 Am. Rep. 135; Whitman v. Louten, 3 N. Y. Supp. 754; Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94, 28 Am. St. Rep. 636; Hays v. Goldman, 71 Ark. 251, 72 S. W. 563.

It is evident to our minds that from the facts disclosed in this case the plaintiffs did not evidence any intention on their part of accepting a surrender or an abandonment o fthe hotel by the defendants, but on the other hand the evidence shows that it was their manifest intention not to accept a surrender of the premises, or release the defendants from the payment of rents or the performance of conditions and stipulations set forth and contained in said lease contract. It is clear to our minds that the court committed prejudicial error in giving said instruction.

It is contended that the trial court erred in sustaining a demurrer to the causes of action in the second amended petition and in the supplemental petitions wherein the plaintiffs seek to recover the taxes they paid on the defendants' furniture located in the hotel, and also wherein they seek to recover as damages the losses sustained by them while operating the hotel. It is contended that the lease contract is something more than a mere lease contract; that aside from the mere rentals to be derived from the hotel under the terms of the lease contract, it was

a distinct and integral part of the consideration moving from the plaintiffs to the defendants that said hotel should be furnished, equipped, and maintained as a hotel, and maintained as a going concern, during the entire time covered by the lease contract; that it was the right and purpose of the plaintiffs under the law not only to preserve the tangible property, but to preserve any and all things which constituted a part thereof, as for instance, the peculiar business that had been established therein, to the end that their investment should develop into and assume a permanent and stable character as a hotel and be so regarded by the public, and in support of this contention the plaintiffs rely upon the following provisions of said contract, to wit:

"Said building and.premises to be used, occupied, and operated by the lessees as a hotel, to be furnished, equipped,. and maintained throughout by the lessees at their own cost in a modern and up-to date manner, and to be maintained in such condition during the life of this lease, natural wear and tear of building and damages caused by the elements excepted."

It is shown that the defendants complied with the provisions of the contract in this: That they furnished and equipped the premises as a hotel in a modern and up-to-date manner and operated it for about 23 months, and when they abandoned it they left such furniture and equipment in the hotel and on the premises, and so far as the record discloses they are still in the hotel and on the premises. It is not contended that the defendants breached their contract in failing and refusing to furnish and equip the hotel in a modern and up-to-date manner, but it is contended that the plaintiffs are entitled to have the hotel maintained and operated as a going concern under the terms of this lease contract; that the plaintiffs did so maintain and operate it after they took possession thereof; and that they are entitled to recover as damages the expenses they incurred while so operating and maintaining the hotel over and above the income therefrom.

We are not able to place the construction on the contract contended for, because from a careful reading of it we are not able to say that it was within the contemplation of the parties, that it was a part of the consideration of the contract that the hotel should be maintained as a going concern during the whole life of the lease, but on the other hand we believe a better interpretation of the language is, that it places a limitation upon the use of the property. We do not believe that plaintiffs are entitled to recover damages for

fancied or probable advantages that might be derived from maintaining the hotel as a going concern during the whole life of the lease, for such profits would be conjectural and speculative in their nature and would depend upon the chance of the business and perhaps other contingencies, and, besides, it is not shown that the hotel as a going concern had any value, but on the other hand the evidence does show that the expense .of operating it exceeded the income derived therefrom, both before and after it was abandoned by the defendants.

We believe that the measure of the damages in the instant case is fixed by the statute (section 2889, Rev. Laws 1910), which reads as follows:

"Notwithstanding the provisions of this chapter, no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except in cases where recovery may be for exemplary damages and penal damages, and in sections 2871 and 2878."

It will be noted that by these provisions of the statute the primary purpose of awarding damages is to compensate the party injured, but the damages are limited, except in certain cases, to the compensation the injured party could have gained by a full performance of the contract by both parties; and hence from the facts as shown by this record we conclude that the lease contract itself furnishes the measure of damages, and that the plaintiffs' recovery is limited to the rentals as fixed by the lease contract. See Hargrove et al. v. Bourne, supra. The court did not err in sustaining the demurrers to said causes of action.

This cause is reversed and remanded to the trial court, with directions to set aside the judgments theretofore rendered by him, and to grant a new trial.

By the Court: It is so ordered.